IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LIA E. VALERO, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | )   Case No. 22-cv-154-DES |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|         Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff LIA E. VALERO ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920(a)(4). This process requires the Commissioner to consider:

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On March 18, 2020, Claimant protectively applied for supplemental security income benefits under Title XVI of the Act. (R. 12, 183-88). Claimant alleges she has been unable to work since an amended alleged onset date of August 23, 2020, due to chronic obstructive pulmonary disorder ("COPD"), arthritis, and bone spurs. (R. 13, 236, 298). Claimant was 56 years old on the date of the ALJ's decision. (R. 23, 33). She has a high school education and past work as a fast-food services manager, sandwich maker, customer complaint clerk, and insurance clerk. (R. 33, 54-55).

Claimant's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 63-94, 116-18). ALJ Edward M. Starr conducted an administrative hearing and issued a decision on September 29, 2021, finding Claimant not disabled. (R. 12-23, 29-61). The Appeals Council denied review on March 23, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Claimant filed this appeal on May 23, 2022. (Docket No. 2).

## III.    The ALJ's Decision

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since her amended onset date of August 23, 2020. (R. 15). At step two, the ALJ found Claimant had severe impairments of disorder of the spine, obesity, and hypertension, but that her trauma-related disorder was nonsevere. (R. 16). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 17).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following non-exertional limitations:

> [T]he claimant can only occasionally climb, crawl, kneel, stoop, and/or crouch; and the claimant can frequently, but not constantly, reach with her right dominant upper extremity.

(R. 18).

Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step four that Claimant could return to her past relevant work as a customer complaint clerk, as she actually performed such occupation and as it is generally performed in the national economy. (R. 23). Accordingly, the ALJ concluded Claimant was not disabled. *Id.*

## IV.     Issues Presented

Claimant asserts the ALJ erred by: (1) failing to consider all her impairments at step two (Docket No. 14 at 4); (2) failing to account for all her impairments and limitations in the RFC (*id.* at 3-5); and (3) failing to properly evaluate the medical source opinions of Jamie Lyons and the state agency physicians (*id.* at 5-6). The Court finds no reversible error in the ALJ's decision.

## V.      Analysis

### A.      ALJ's Error in Assessing the Severity of Claimant's Mental Impairments Was Harmless

Plaintiff contends that the ALJ erred at step two by failing to consider her diagnosed depression and anxiety at step two of the sequential evaluation.[1]  (Docket No. 14 at 4).

The ALJ considers the "medical severity" of a claimant's impairments at step two of the sequential evaluation. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment is not severe if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities with no more than a minimal effect on a claimant's ability to work. *See* Social

---

[1] After a thorough review of the medial records, the Court is unable to identify an anxiety disorder diagnosis. However, consultative examiner Dr. William L. Cooper did diagnose Claimant with PTSD, panic disorder (without agoraphobia) and depressive disorder. (R. 353).

4

Security Ruling ("SSR") 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985). A claimant who does not have a severe medically determinable impairment, or a combination of impairments that is severe, is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A claimant's burden at step two is a *de minimis* showing of impairment, but the claimant must demonstrate "more than the mere presence of a condition or ailment." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997).

In his written decision at step two, the only mental impairment the ALJ evaluated was claimant's trauma-related disorder, which he found was a non-severe impairment. (R. 16). Although the ALJ did not mention or make any findings regarding the severity of Claimant's depressive disorder or panic disorder at step two, Claimant has not demonstrated a reversible error at this step. Since the ALJ found Claimant had at least one severe impairment and proceeded to the subsequent steps of his analysis, any failure in identifying additional medically determinable impairments at step two does not constitute reversible error. *See Allman v. Colvin,* 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe."); *Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Moreover, the ALJ considered Claimant's depressive disorder, panic disorder, and subjective complaints of anxiety as part of the RFC discussion, as explained in Part B (2) below. *See Ray v. Colvin,* 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells v. Colvin,* 727 F.3d 1061, 1069 (10th Cir. 2013) ("[A] failure to find an impairment medically determinable is essentially a step-four error," that is "obviated if the ALJ considers the non-medically determinable impairment in assessing the RFC.").

## B.   ALJ's RFC Determination is Supported by Substantial Evidence

### 1.   Medical Source Opinions

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 416.913(a)(2). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." 20 C.F.R. § 416.913(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 416.920c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[2] 20 C.F.R. § 416.920c(b)(2). The ALJ is not required to articulate findings on the

---

[2] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 416.920c(b)(2), (3).

        **a.**        **Jamie A. Lyons' Medical Source Opinion**

On July 7, 2021, Jamie A. Lyons, a licensed clinical social worker, completed a mental RFC assessment form. (R. 498). The form instructed Ms. Lyons to check boxes in the areas in which Claimant had "no useful ability to function on a sustained basis which is defined as an eight-hour work day for five days in a full work week." *Id*. Ms. Lyons checked boxes for 19 of the 23 functional areas she assessed, including Claimant's ability to maintain attention and concentration for extended periods; respond appropriately to supervision, co-workers, and usual work settings; interact appropriately with the general public; and respond appropriately to changes in the work setting. *Id.*

In discussing the medical source opinion evidence, the ALJ concluded Ms. Lyons' opinions were unpersuasive. (R. 22). In support of this determination, the ALJ noted Ms. Lyons' "conclusory checkbox form" had little evidentiary value because she failed to cite to any medical evidence or provide elaboration to support her conclusions. *Id*. The ALJ further noted the record did not contain any treatment notes from Ms. Lyons to support her opinions. *Id*.

Claimant appears to assert that the ALJ's conclusions regarding the supportability of Ms. Lyons' opinions are not supported by substantial evidence.[3] Claimant takes issue with the ALJ's finding that there was no evidence that Ms. Lyons ever treated Claimant, suggesting that the ALJ

---

[3] Claimant does not raise or develop any argument regarding the ALJ's analysis of the consistency of Ms. Lyons' opinions with the other evidence of record, and any such argument is waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.).

could have questioned Claimant about Ms. Lyons' procedures at the administrative hearing, but did not do so. (Docket No. 14 at *6). The Court is perplexed by Claimant's argument. The ALJ's determination is accurate in that there are no treatment notes from Ms. Lyons in the record. Furthermore, the lack of treatment notes is relevant to the type of relationship between Ms. Lyons' and the Claimant, which is a factor the ALJ must consider when evaluating the persuasiveness of a medical opinion. *See* 20 C.F.R. § 416.920c(a), (c). In any event, the ALJ also noted Ms. Lyons did not support her opinion with references to any medical evidence or provide any supporting explanations to her checked boxes. These observations accurately describe Ms. Lyons' form and are proper considerations for an ALJ to make when evaluating the supportability of a medical source opinion as part of a persuasiveness analysis. *See* 20 C.F.R. § 416.920c(c)(1). Accordingly, the Court finds the ALJ's determination that Ms. Lyons' opinions were unpersuasive is supported by substantial evidence.

### b. State Agency Physicians' Opinions

On September 4, 2020, state agency physician Dr. David Coffman completed a physical RFC assessment wherein he concluded that Claimant could perform light work with frequent climbing ramps/stairs, kneeling, crouching and crawling, and occasional climbing ladders/ropes/scaffolds and stooping. (R. 70-73). Dr. Coffman further concluded that due to Claimant's mild limited range of motion at the physical consultative examination performed by Talisha Nichols, APRN on August 29, 2020, Claimant was further limited to "frequent right overhead reaching." (R. 72). State agency physician Dr. Judy Marks-Snelling affirmed these findings on review. (R. 88-90).

In discussing the opinion evidence, the ALJ found the state agency physicians' opinions regarding Claimant's physical abilities "generally persuasive," explaining that such physicians were qualified medical health professionals and experts in disability evaluation. (R. 22). The ALJ further explained that their opinions were generally consistent with the medical evidence of record, including the mild to moderate x-ray evidence, Claimant's conservative treatment, and any limitations associated to Claimant's obesity. *Id*. Accordingly, ALJ adopted the state agency physicians' opinions that Claimant could perform light work with frequent reaching with her right upper extremity and occasional climbing ladders/ropes/scaffolds and stooping, but further limited Claimant to occasional climbing ramps/stairs, kneeling, crouching and crawling. (R. 18).

Claimant contends the ALJ ignored the state agency physicians' opinion that her reaching was limited because he failed to include any reaching limitations in the RFC assessment. (Docket No. 14 at 4). The Court is again perplexed by Plaintiff's argument because it is clearly belied by the record. The ALJ's RFC assessment specifically includes the following reaching limitation: "[T]he claimant can frequently, but not constantly, reach with her right dominant upper extremity." (R. 18). The Court thus finds the ALJ did not ignore the state agency physicians' opinion that Claimant had reaching limitations.[4]

---

[4] The Court notes that the state agency physicians limited Claimant to "frequent right overhead reaching," while the ALJ found Claimant could "frequently, but not constantly, reach with her right dominant upper extremity." (R. 18, 72, 90). Plaintiff does not raise or develop any argument regarding the consistency of the state agency physicians' reaching opinion with the RFC, and any such argument is waived. *See Bronson*, 500 F.3d at 1104 ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.).

### 2. Consideration of Mental Impairments

If a claimant has a medically determinable mental impairment, the ALJ must assess the claimant's limitations attributable to such mental impairment(s) in the following four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). These areas of mental functioning are known as the "paragraph B" criteria. 20 C.F.R. pt. 404, subpt. P., app. 1 § 12.00(E). The ALJ rates the claimant's degree of limitation in each of the "paragraph B" criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). "The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis." *Wells v. Colvin,* 727 F.3d 1061, 1068 (10th Cir. 2013). If the ALJ rates the claimant's degree of functional limitation as "none" or "mild," he will generally find the claimant's mental impairment(s) not severe at step two. 20 C.F.R. § 416.920a(d)(1). If the mental impairment is severe, the ALJ will then determine at step three whether such impairment meets or equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920a(d)(2) & pt. 404, subpt. P., app. 1 ("the listings").

In assessing Claimant's trauma-related disorder under the "paragraph B" criteria, the ALJ found that Claimant had a mild limitation in the mental functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. (R. 16). The ALJ thus found Claimant's trauma related disorder non-severe and explained that such impairment "does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities." (R. 16-17).

Claimant asserts the ALJ erred by failing to account for his step-two findings of mild limitations in the "paragraph B" criteria. (Docket No. 14 at 3-4). However, an ALJ is not necessarily bound by his step-two findings when determining a claimant's RFC because "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The mental RFC assessment used at steps four and five requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three. *Id*.

In his written decision, the ALJ considered Plaintiff's PTSD, depressive disorder, panic disorder, and anxiety as part of the RFC assessment by discussing Claimant's hearing testimony, Dr. Cooper's consultative examination and opinion, and the opinions of Ms. Lyons and the state agency psychologists. (R. 18-19, 21-22). Specifically, the ALJ noted that Claimant alleged, *inter alia,* mental limitations, increased anxiety since becoming unable to work, panic attacks, excessive worry, sadness, and difficulty maintaining concentration. (R. 18). As to Dr. Cooper's consultative examination, the ALJ noted Dr. Cooper diagnosed Claimant with PTSD, panic disorder without agoraphobia, and depressive disorder. The ALJ found persuasive Dr. Cooper's opinion that Claimant's mental health impairments would not significantly interfere with her ability to work if she could work from a physical standpoint. (R. 22). As support for this finding, the ALJ noted Dr. Cooper personally evaluated Claimant prior to rendering his opinion, and that his opinion was consistent with Claimant's delay in seeking mental health treatment and with the activities and abilities she endorses despite her alleged impairments. *Id*. The ALJ also found persuasive the state agency psychologists' opinions that Claimant's mental impairments were non-severe and resulted in only mild limitations of functioning. (R. 16, 22). The ALJ cited Claimant's delay in

seeking formal mental health treatment as well as her reported activities and abilities (preparing simple meals, driving short distances, managing finances, socializing with others via phone/computer, and not needing reminders for personal care and/or medications) as support for his finding. (R. 22). The ALJ found Ms. Lyons' opinions unpersuasive for the reasons set forth above. *Id.* Thereafter, the ALJ omitted any psychologically-based limitations from the RFC. (R. 18). Although the ALJ could have been more thorough in his RFC assessment by specifically stating Claimant's mental impairments did not result in any work-related limitations, the Court finds the ALJ's discussion of the evidence sufficient for the Court to follow his reasoning. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. . . . [W]e cannot insist on technical perfection."). Moreover, the Tenth Circuit "has repeatedly held, albeit in unpublished decisions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps." *Suttles v. Colvin,* 543 F. App'x 824, 826-27 (10th Cir. 2013) (unpublished) (citing *Beasley v. Colvin,* 520 F. App'x 748, 754 (10th Cir. 2013); *DeFalco-Miller,* 520 F. App'x 741, 747-48 (10th Cir. 2013)).

### 3. Consideration of Hand Impairment

Claimant next argues the ALJ failed to consider and account for her hand impairment. (Docket No, 14 at 5). In March 2020, Claimant presented to the emergency room after falling down some stairs the week prior and reported, *inter alia,* right wrist/hand pain and difficulty closing her right hand. (R. 370-401). An x-ray taken that day revealed no acute fractures and minimal degenerative changes to her thumb.[5] (R. 319-20). Notably, Claimant was discharged from

---

[5] As the ALJ correctly noted, it is somewhat unclear which hand was x-rayed. (R. 19). The examination is titled "XR Hand 3+ VW Right," but the radiologist's findings and impressions refer to Claimant's left hand. (R. 319-20).

the emergency room without any hand-related diagnoses. (R. 376). On August 29, 2020, Talisha Nichols, APRN conducted a consultative physical examination of Claimant. (R. 338-44). Ms. Nichols noted Claimant declined to perform the range of motion testing in her wrists and fingers due to hand pain and found decreased grip strength (4/5) along with mild swelling in her bilateral hands. (R. 340, 343). Ms. Nichols opined Claimant could: (i) effectively oppose her thumb to her fingertips, noting her ability to do so appeared weak; (ii) manipulate small objects; and (iii) effectively grasp tools such as a hammer, again noting Claimant's weak bilateral grip strength. (R. 340). Ms. Nichols assessed Claimant with, *inter alia*, bilateral hand pain and decreased grip strength. (R. 343). Thereafter, the record contains two instances where Claimant again reported hand pain, but her medical providers made no hand-related findings or diagnoses. (R. 458, 471).

The Court finds no error in the ALJ's analysis of Claimant's hand impairment. The ALJ thoroughly discussed Plaintiff's hearing testimony and the findings of her treating, consultative, and reviewing physicians regarding her hands in the RFC discussion. (R. 18-19, 21-22). The ALJ noted Claimant's testimony that she experiences pain and burning in her hands which makes it difficult for her to use her hands for prolonged periods. (R. 18). However, the ALJ ultimately determined Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective evidence of record, and Claimant does not challenge the ALJ's decision in this regard. (R. 19). The ALJ also discussed the March 2020 hand x-ray that revealed only minimal degenerative changes in one of her thumbs, and he considered Ms. Nichols' consultative examination. (R. 19, 21). Although Ms. Nichols diagnosed Claimant with hand pain and decreased grip strength, she did not identify any functional limitations. In fact, Ms. Nichols specifically indicated Claimant <u>could</u> perform several

manipulative movements despite her weak grip. (R. 340). Claimant fails to point to any evidence other than her own assertions to support the additional limitations she claims. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [she is] disabled."); *see also Hamilton v. Sec'y of Health & Hum. Servs.,* 961 F.2d 1495, 1499 (10th Cir. 1992) ("[a claimant's] testimony alone cannot establish a nonexertional impairment"). Because Plaintiff points to no evidence the ALJ failed to consider, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ following the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted).

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this  21st  day of August, 2023.

---

D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE